# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|   |   |   |
|---|---|---|
| ROSA M. ALEMAN MARTINEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-404 (RBW) |
| | ) | |
| PUERTO RICO FEDERAL AFFAIRS | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## MEMORANDUM OPINION

Rosa M. Aleman Martinez, the plaintiff in this civil case, seeks injunctive relief and compensatory and punitive damages for her claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII" or the "Act"), 42 U.S.C. § 2000e-2 (2006). Currently before the Court is defendant Puerto Rico Federal Affairs Administration's ("PRFAA")[1] motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the Court concludes that it must grant the defendant's motion for summary judgment.[2]

---

[1]    The PRFAA is the remaining named defendant in this case, which was originally brought against the PRFAA and several individual defendants. See Complaint ("Compl."); Second Amended Complaint ("Second Am. Compl."). All claims against the individual defendants have since been dismissed. See Aleman-Martinez v. PRFAA, et al., Order, No. 08-404 (RBW) (D.D.C April 29, 2009); Aleman-Martinez v. PRFAA, et al., Order, No. 08-404 (RBW) (D.D.C. September 28, 2009).

[2]    In addition to the documents cited above, the Court considered the following filings and all attachments submitted with the filings in rendering its decision: (1) Defendant Puerto Rico Federal Affairs Administration's Motion for Summary Judgment ("Def.'s Mot."); (2) the Plaintiff's Opposition to Defendant Puerto Rico Federal Affairs Administration's Motion for Summary Judgment; and (3) the Defendant's Supplemental Reply in Support of Its Motion for Summary Judgment ("Def.'s Supp. Reply").

## I.  BACKGROUND

A. The Plaintiff's Employment with the PRFAA

The PRFAA is an executive-branch agency of the government of the Commonwealth of Puerto Rico, and its primary mission is to serve as a liaison between the Commonwealth of Puerto Rico and the United States government.  Defendant Puerto Rico Federal Affairs Administration's Memorandum of Law in support of its Motion for Summary Judgment ("Def.'s Mem.") at 2.  The plaintiff began working for the PRFAA as a clerk on or about September 8, 1986, and was promoted several times thereafter.  Id. at 4.  One of the promotions was to the position of Director of Finance on June 1, 2000.  Second Am. Compl. ¶ 13; Def.'s Mem. at 4.  As Director of Finance, the plaintiff's primary responsibilities were to issue disbursements, to review the accounts payable, and to review the invoices of other staff members.  Memorandum in Opposition to Defendant Puerto Rico Federal Affairs Administration's Memorandum of Law in Support of its Motion for Summary Judgment ("Pl.'s Opp'n") at 2.[3]  In total, the plaintiff worked for the PRFAA for approximately twenty years, Def.'s Mem., Ex. B (Plaintiff's Deposition Transcript ("Pl.'s Dep. Tr.")) at 33:4-5, until her termination on March 13, 2006, Second Am. Compl. ¶ 19.

B.  Measures Taken by the PRFAA in Response to Budget Cuts

In January 2005, following the 2004 elections in Puerto Rico, a new Administration took office and Eduardo Bhatia was appointed Executive Director of the PRFAA.  Def.'s Mem., Ex. A (Affidavit of Eduardo Bhatia ("Bhatia Aff.")) ¶ 1.[4]  Until 2005, the PRFAA's annual budget

---

[3]     Because the plaintiff's opposition lacks page numbers, the Court will refer to the page numbers as they appear on the electronic docket.

[4]     The plaintiff contests the defendant's reliance on Bhatia's affidavit.  See Pl.'s Opp'n" at 2 ("[The] PRFAA relies on a self-serving affidavit of its former Executive Director.  Defendant failed to provide accurate information accompanied by supporting documents.  In other words, [its allegations are] not supported by any kind of admissible

(Continued . . . )

exceeded $10 million; however, as a result of what the defendant characterizes as a "severe fiscal crisis" facing Puerto Rico, its budget was "drastically reduced" between 2005 and 2007 to approximately $7 million.  Id., Ex. A (Bhatia Aff.) ¶¶ 3-5.  Although the plaintiff presents some evidence of a fiscal year 2004-2005 budget surplus, Pl.'s Opp'n, Ex. S (November 17, 2005 Letter from Juan Torres Martinez to Bhatia ("Nov. 17, 2005 Letter")), at the beginning of 2005 the PRFAA projected "a budget deficit of approximately $700,000 before the end of the fiscal year,"[5] and for this reason, during 2005, the PRFAA's budget was "cut by more than 30%," Def.'s Mem., Ex. A (Bhatia Aff.) ¶ 5.

"In response to the projected budget deficit, [the] PRFAA implemented various cost-saving measures," including a plan for "eliminating positions in order to maximize the agency's remaining resources."  Id., Ex. A (Bhatia Aff.) ¶ 6.  Director Bhatia instructed the PRFAA's Deputy Director, Ana Carrión, to "prepare a layoff plan and to submit a report to the Office of the Governor of Puerto Rico with proposed additional cuts in staffing and other expenditures." Id., Ex. A (Bhatia Aff.) ¶ 8.  Specifically, Director Bhatia requested that Deputy Director Carrión "review and evaluate" the PRFAA employees, "especially those of the Administration, Budget and Finance Division," id., Ex. A (Bhatia Aff.) ¶ 9, because this division had more employees than any other in the agency, despite its scope being limited to internal organizational matters "rather than the external services that make up the PRFAA's entire mandate and mission," id., Ex. A (Bhatia Aff.) ¶ 9.  In July 2005, Deputy Director Carrión "finalized her evaluation and

---

( . . . continued)

document generate[d] by the entity during the course of its operation."); id. at 20 ("[The d]efendant relies [o]n an unsupported affidavit and failed to present documentary evidence to sustain its defenses.").  However, in subparts (c)(1) and (c)(4) of Federal Rule of Civil Procedure 56, it is clear that affidavits made on personal knowledge and based on facts that would be admissible in evidence may be used to support or oppose a motion.  Bhatia's affidavit satisfies the criteria of Rule 56, and the plaintiff's challenge to it is therefore without merit.

[5]     The PRFAA's fiscal year runs from July 1 to June 30.  Def.'s Mem., Ex. A (Bhatia Aff.) ¶ 5.

plan for restructuring the PRFAA," which included the "elimination of the Administration portion of the Administration, Budget and Finance Division," as well as a "reduction of the employees assigned to the Budget and Finance tasks to [seven] employees." Id., Ex. A (Bhatia Aff.) ¶ 10.  The plaintiff "was among the employees mentioned in the plan for possible job elimination." Id., Ex. A (Bhatia Aff.) ¶ 10.

In September 2005, as part of the PRFAA reorganization spearheaded by Deputy Director Carrión, the Administration, Budget and Finance Division was replaced by the Budget and Finance Division. Id., Ex. A (Bhatia Aff.) ¶ 11.  Jorge Pachon was appointed supervisor of the new division effective September 1, 2005. Id. at 5-6.  "Prior to the reorganization, the plaintiff reported to the then-Director of the Administration, Budget and Finance Division, Victor Torres." Id., Ex A (Bhatia Aff.) ¶ 11.  After the reorganization, the plaintiff was assigned to the Budget and Finance Division, and supervised by Chief Financial Officer Pachon. Id., Ex. B (Pl.'s Dep. Tr.) at 33:8-18.  On January 13, 2006, Director Bhatia made the decision to eliminate four positions, one of which was the plaintiff's position. Id., Ex. A (Bhatia Aff.) ¶ 12.  The plaintiff was notified of this elimination on March 13, 2006. Id., Ex. A (Bhatia Aff.) ¶ 15.  The tasks performed by the plaintiff were assigned to other PRFAA employees. Id., Ex. A (Bhatia Aff.) ¶ 13.  In the Spring of 2006, the PRFAA learned that it was facing additional budget cuts and in June 2006, the Puerto Rican legislature announced another 10% reduction in the PRFAA's budget, leading to further job eliminations. Id., Ex. A (Bhatia Aff.) ¶ 16.  From January 2006 to June 2006, the PRFAA eliminated or did not rehire to fill vacancies for eleven positions. Id., Ex. A (Bhatia Aff.) ¶ 17.

C.  The Plaintiff's Sexual Harassment Allegations

The plaintiff maintains that from November 2005 until March 2006, Chief Pachon subjected her to a hostile work environment.  Second Am. Compl. ¶ 16; Pl.'s Opp'n at 3. Specifically, the plaintiff alleges that from the day he became her supervisor, Chief Pachon began a "pattern of uncomfortable, repeated and sustained sexual conduct upon the plaintiff," Pl.'s Opp'n at 3, consisting of "commentaries, remarks, innuendos, expressions, and unwelcome looks and advances towards her person with sexual connotations and overtones," Second Am. Compl. ¶ 16.  She claims that from the time Chief Pachon "was appointed as [her] supervisor, . . . [he] made clear to [her] that things [were] going to be his way from thereon."  Pl.'s Opp'n at 3-4. She contends that Chief Pachon made "comments about her dresses," id. at 4, and testified at her deposition that he "always [had] something to say about the way [she] was dressing," id., Ex. I (Plaintiff's Deposition Transcript ("Pl.'s Dep. Tr.")) at 131:13-14.  The plaintiff alleges that "[these] kinds of remarks were made constantly."  Id. at 4.  She also claims that Chief Pachon always "look[ed] at [her] with a nasty look," id., and she testified at her deposition that he "was looking at [her] breast[s] all the time," Def.'s Mem., Ex. B (Pl.'s Dep. Tr.) at 165:10-11. Similarly, the plaintiff asserts that Chief Pachon "constantly used to watch female breasts," and that a coworker, "Ms. Torres[,] complained" about this conduct.  Pl.'s Opp'n at 10.

The plaintiff further testified that sometime in February 2006, she entered Chief Pachon's office while he was on the phone and heard him say "hold on, someone with a smelly—who's smelling so good is just coming into my office." Id. at 4; see also id., Ex. I (Pl.'s Dep. Tr.) at 125:12-126:4.  The plaintiff also contends that Chief Pachon once said to her in a "bad tone, 'I won't bite you,'" which she understood to be "suggestive of her sexual desirability." Id. at 4-5. The plaintiff also claims, "[w]hile training him, Pachon demanded [her] to get close to [him] and

rubbed his legs on her legs," and that "[t]his type of conduct repeated several times between November and December of 2005 and February [] 2006." Id. at 10.  Additionally, the plaintiff avers that in "October of 2005 Pachon went into [her] office and grabbed her hand, telling her 'I love the design of your nails.'" Id. at 11.  She claims that he "touched her hand at least . . . two different times between October and December of 2005.  Id.  Lastly, the plaintiff asserts that when she asked Chief Pachon when she would get assigned new duties, he answered, "be good with me and don't worry about it."  Id. at 5.

The plaintiff claims that, in response to her rejection of Chief Pachon's behavior, she was subjected to "needless monitoring, scrutiny[,] and eventually some of her job duties were reassigned to co[]workers."  Second Am. Compl. ¶ 18.  She further contends that Chief Pachon "create[d] some operational procedures to make [her] go to his supervisor's office on a frequent basis, where he spent more of his working time."  Pl.'s Opp'n at 5.  She alleges that Chief Pachon transferred the petty cash box from the plaintiff's office to his office.  Id.  The plaintiff testified at her deposition that prior to these alleged events, she "never had a problem on [her] job," Def.'s Mem, Ex. B (Pl.'s Dep. Tr.) at 158:3, but that by February 2006, she "couldn't handle it [any] more," id., Ex. B (Pl.'s Dep. Tr.) at 175:5.

The PRFAA's personnel manual states that it is an equal-opportunity employer that "has a policy of prohibiting all types of discrimination in the workplace, including discrimination on the basis of sex and its expression as sexual harassment."[6] Id., Ex. C (PRFAA Personnel Handbook

---

[6]      The PRFAA's personnel manual defines sexual harassment as:

[A]ny type of undesired sexual approach, demand for sexual favors and any other verbal or physical conduct of a sexual nature when it results in one or more of the following circumstances: (a) When submitting to such conduct becomes an implicit or explicit term or condition of employment of a person. (b) When the submission to or rejection of such conduct by a person becomes the foundation for decisions made regarding employment or employment conditions of the employee. (c) When the conduct has the effect or purpose of interfering in an unreasonable

(Continued . . . )

("Personnel Handbook")) at 12.[7]  The PRFAA manual encourages PRFAA employees to raise

employment concerns and specifically provides that

> [i]t is the duty and obligation of all employees to inform any act of an
> inappropriate sexual nature of which he/she is a victim or has observed
> in his/her workplace.  The complaint can be submitted via the Executive
> Director or General Counsel or any other functionary of the agency
> delegated by him, who will then refer the matter to the Office of Legal
> Affairs and the Division of Human Resources.

Id., Ex. C (Personnel Handbook) at 13.  The policy also specifies that no retaliatory action will

be taken against a person who files a complaint of sexual harassment.  Id., Ex. C (Personnel

Handbook) at 15, ¶ 6.

    The defendant argues that the plaintiff was "aware that [the] PRFAA has a policy against

sexual harassment in the workplace and that there was a procedure set forth for reporting issues

of sexual harassment."  Def.'s Mem. at 4; see also id., Ex. C (Receipt of Employee Handbook &

Certification) at 2-3.  The plaintiff, however, claims that she "does not recall having signed a

document titled, 'Receipt of Employee Handbook,' dated February 26, 1998."  Pl.'s Opp'n at 3.

In addition, the plaintiff claims that the PRFAA never gave her a copy of the May 10,1999

document titled Certification.  Id.

    The plaintiff never submitted a formal report detailing the allegations of sexual

harassment to the PRFAA's Human Resources Department, but she did report the situation to

Victor Torres, her former supervisor, id. at 5, and "thought that as one of the highest ranking

---

( . . . continued)
    manner with the ability to work of that person or when it creates an intimidating, hostile, or
    offensive environment.

Def.'s Mem., Ex. C (Personnel Handbook).

[7]    Exhibit C was submitted with the Defendant's Memorandum and it consists of several separately numbered
exhibits.  For ease of reference, the Court will indicate the pagination of Exhibit C according to the page numbers
assigned by the electronic docket.

position[s] within the agency[,] he might raise the situation [with] the Legal Department or the Executive Director," id.  She testified at her deposition that when she complained to him, Torres told her to "calm down" and that she "[had] to put it in writing."  Def.'s Mem., Ex. B (Pl.'s Dep. Tr.) at 152:9.

### C. The Plaintiff's Termination From PRFAA

During a January 13, 2006 meeting "regarding administrative employees and the Budget and Finance Division," Director Bhatia "made the decision to eliminate four positions," including the plaintiff's position.  Def.'s Mem., Ex. A (Bhatia Aff.) ¶ 12.  Director Bhatia asserts that he "had no knowledge of the alleged inappropriate conduct" the plaintiff "claims to have endured or [the plaintiff's] reaction to [Chief] Pachon's alleged conduct."  Id., Ex. A (Bhatia Aff.) ¶ 14.  As previously noted, the plaintiff was notified that her position had been terminated on March 13, 2006.  Id., Ex. C (Aleman Deposition Exhibit 11: Notice of Termination) at 17.  The plaintiff has acknowledged that she does not know who made the decision to terminate her employment.  Pl.'s Opp'n, Ex. I (Pl.'s Dep. Tr.) at 97:19-21.

### D. The Procedural Posture of the Plaintiff's Lawsuit

On June 2, 2006, the plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that she had been subjected to discrimination based on her sex and also to retaliation.  Id., Ex. C (Aleman Deposition Exhibt No. 15: EEOC Charge ("EEOC Charge")) at 18.  The EEOC subsequently issued to the plaintiff a Notice of Right to Sue on February 16, 2007.  Second Am. Compl. ¶ 3.

The plaintiff originally initiated this lawsuit in the United States District Court for the District of Puerto Rico on March 12, 2007, against the PRFAA, as well as Director Bhatia, Bhatia's wife, Chief Pachon, Pachon's wife, Deputy Director Carrion, and Carrion's husband.

See Compl. ¶¶ 6-11.  The first complaint included (1) a 42 U.S.C. § 1983 claim, (2) a Fifth

Amendment Due Process claim, (3) a Fourteenth Amendment Due Process claim, (4) a claim

under Puerto Rico Act No. 100, 20 P.R.L.A. 146 (1959), and under Puerto Rico Act No. 17, 29

P.R.L.A. 155 (1988), and (5) a Title VII claim.  See Compl. ¶¶ 27-48.

On February 28, 2008, the District of Puerto Rico granted the defendants' motion to

transfer this case to this Court.  Aleman-Martinez v. PRFAA, Order, No. 07-1205 (JAF) (D.P.R.

Feb. 28, 2008).  Since the transfer, this Court has granted in part motions to dismiss filed by the

original defendants; as a result, only the Title VII claim against the PRFAA remains.  See

Aleman-Martinez v. PRFAA, Order, No. 08-404 (RBW) (D.D.C. Apr. 29, 2009); Aleman-

Martinez v. PRFAA, Order, No. 08-404 (RBW) (D.D.C. Sept. 28, 2009).  The PRFAA filed its

motion for summary judgment on January 21, 2011.

## II.  STANDARD OF REVIEW

Under Rule 56, summary judgment is appropriate where "the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party" on an element of the claim.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  When ruling on a Rule 56 motion, the Court must view the evidence

in the light most favorable to the nonmoving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C.

Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court

must therefore draw "all justifiable inferences" in favor of the nonmoving party and accept the

nonmoving party's evidence as true.  Anderson, 477 U.S. at 255.  The nonmoving party,

however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C.

Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 248) (internal quotation marks omitted), because "conclusory allegations unsupported by factual data will not create a triable issue of fact," <u>Pub. Citizen Health Research Grp. v. FDA</u>, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal brackets and quotation marks omitted).  Indeed, to withstand a properly supported motion for summary judgment, the nonmoving party must cite materials in the record—such as depositions, documents, or declarations—and show that the materials cited establish a genuine dispute of material fact.  <u>See</u> Fed. R. Civ. P. 56(c)(1)(A)-(B).  Finally, a supporting or opposing affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated."  Fed. R. Civ. P. 56(c)(4).  If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the moving party is entitled to summary judgment.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

## III.  LEGAL ANALYSIS

### A.  The PRFAA's Argument that the Plaintiff Did Not Exhaust Her Administrative Remedies

The first issue for the Court to address is whether the plaintiff failed to exhaust her administrative remedies concerning the incidents of alleged sexual harassment that occurred prior to February 2006 because she did not mention them in her EEOC complaint. [8]  It is clear

---

[8]    In its reply in support of its motion for summary judgment, the defendant alleges that the "[p]laintiff failed to specifically address, much less deny, the numbered paragraphs set forth in the PRFAA's Statement of Undisputed Material Facts. . . . These procedural defects are a separate and independent basis to grant [the d]efendant's [m]otion and to dismiss [the p]laintiff's claims."  Def.'s Supp. Reply at 1 n.1.  For several reasons the Court does not agree.  First, a motion for summary judgment entitles the moving party to judgment on the claims at issue, not to dismissal of those claims.  <u>See</u> Fed. R. Civ. P. 56(a).  Thus, even if the Court agreed with the defendant's contention, dismissal would not be the appropriate remedy.  Second, and more importantly, the District of Columbia Circuit has observed that "strong policies favor the resolution of genuine disputes on their merits," <u>Jackson v. Beech</u>, 636 F.2d 831, 832 (D.C. Cir. 1980).  Moreover, Federal Rule of Civil Procedure 56 makes clear that a movant must show that it is

(Continued . . . )

that "[b]efore a Title VII plaintiff may institute a civil action alleging discrimination, she must

file an administrative complaint with the EEOC." Caldwell v. ServiceMaster Corp., 966 F.

Supp. 33, 48 (D.D.C. 1997) (citing Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)).

"Although a complaint in some manner or in some form" must be filed with the EEOC, "it is

well settled that a vaguely worded charge is not fatal to a Title VII plaintiff's case." Caldwell,

966 F. Supp. at 49.  Moreover, "EEOC complaints are to be liberally construed, because they are

often drafted 'by persons unschooled in technical pleading.'" Id. (quoting Shehadeh v.

Chesapeake & Potomac Tele. Co., 595 F.2d 711, 727 (D.C. Cir. 1978)).  However, "it is also true

that the requirement of some specificity in a charge is not a mere technicality . . . and a liberal

interpretation of an administrative charge cannot be used to permit a litigant to bypass the Title

VII administrative process." Caldwell, 966 F. Supp. at 49 (quoting Park, 71 F.3d at 907 (internal

quotation marks omitted)).  "It is the defendant's burden to prove by a preponderance of the

evidence that the plaintiff failed to exhaust administrative remedies." Na'im v. Rice, 577 F.

Supp. 2d 361, 370 (D.D.C. 2008) (citing Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985)

(stating that "because untimely exhaustion of administrative remedies is an affirmative defense,

the defendant bears the burden of pleading and proving it")).

     A claim that is not included in an administrative complaint is "barred" under Title VII,

"unless it is like or reasonably related to the allegations of the charge and growing out of such

allegations." Park, 71 F.3d at 907 (internal quotation marks and citations omitted).  "At a

minimum, the Title VII claims must arise from 'the administrative investigation that can

---

( . . . continued)

"entitled" to summary judgment, Fed. R. Civ. P. 56(a) & 56(e), suggesting that granting summary judgment on a procedural defect is inappropriate, and indicating that a court must always evaluate whether summary judgment is warranted for the moving party.  See Alexander v. FBI, 691 F. Supp. 2d 182, 193 (D.D.C. 2010) (explaining that "even where a summary judgment motion is unopposed, it is only properly granted when the movant has met its burden" of demonstrating the absence of a genuine issue of material fact (citing Weisberg v. DOJ, 627 F.2d 365, 368 (D.C. Cir. 1980))).

reasonably be expected to follow the charge of discrimination.'" Id. (quoting Chisholm v. U.S.

Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981)).      The defendant alleges that "because [the

p]laintiff's harassment claim does not refer to any alleged unlawful conduct prior to February

2006, any alleged acts of harassment that purportedly took place prior to February 2006 are

outside the scope of [the p]laintiff's EEOC charge."  Def.'s Mem. at 11.  Specifically, the

defendant argues that the "complete statement [in the EECO charge] reads 'beginning in

February 2006, . . . I was subjected to consistent sexual comments.'" Def.'s Supp. Reply at 3, and

that the timeframe of the harassment alleged by the plaintiff is therefore quite clear.  The

plaintiff, however, contends that the claims in this case, including conduct that transpired prior to

February 2006, are reasonably related to and naturally arise from the claims set forth in her June

2, 2006 EEOC complaint.  Pl.'s Mem. Opp'n at 28.

    Although the defendant is correct that the plaintiff's EEOC complaint does identify the

period of alleged harassment as beginning in February 2006, the specificity imparted by that date

in the EEOC charge is tempered by the remainder of the sentence that follows that introductory

clause.  Specifically, the pertinent sentence in the EEOC complaint actually reads in its entirety:

"Beginning in February 2006, and while under the supervision of Chief Financial Officer – Mr.

Pachon, I was subjected to his consistent sexual comments."  Def.'s Mem., Ex. C (EEOC Charge)

at 18 (emphasis added).  While certainly not a perfectly drafted sentence, the use of the word

"and" does seem to expand the time frame of the alleged harassment from February 2006 to the

entire time the plaintiff was under Chief Pachon's supervision.[9]  In any event, it is likely that a

reasonable administrative investigation would have uncovered the fact that Chief Pachon's

supervision of the plaintiff began in September 2005, not February 2006.  Furthermore, the only

---

[9]      The Court is troubled by the defendant's omission of the word "and," as it is important language, the omission of which is misleading and conveys a false impression.

difference between the EEOC complaint and the three complaints the plaintiff has filed in this

Court is the timeframe during which the sexual harassment allegedly occurred.  In other words,

there is no question that Chief Pachon's purported behavior is "like or reasonably related to the

allegations of the charge and growing out of such allegations." Park, 71 F.3d at 907.

Accordingly, because the pre-February 2006 conduct would have arisen from the administrative

investigation that would have reasonably followed the plaintiff's June 2, 2006 EEOC complaint,

and because the claims asserted in the EEOC complaint are like the ones alleged in this case, the

defendant is not entitled to summary judgment on the basis that the plaintiff failed to exhaust her

administrative remedies.

> B.   The PRFAA's Argument that the Plaintiff has Failed to Establish a Prima Facie Case
> of Sexual Harassment

The second issue before the Court is whether the plaintiff has made a sufficient showing

to establish a prima facie claim of sexual harassment.  "To establish a prima facie case of the

existence of a hostile work environment based on sexual harassment, the plaintiff must state facts

sufficient to prove each of the following elements: (1) she was subjected to harassment because

of her sex; (2) she found the harassment subjectively unwelcome; (3) the harassment was

sufficiently severe or pervasive to create an abusive, hostile working environment; and (4) she

has some basis for imputing liability for the harassment to the employer." Cromer-Kendal v.

District of Columbia, 326 F. Supp. 2d 50, 57 (D.D.C. 2004); see also Davis v. Coastal Int'l

Security, Inc., 275 F.3d 1119, 1122-23 (D.C. Cir. 2002).  "[I]n order to be actionable under [Title

VII], a sexually objectionable environment must be both objectively and subjectively offensive,

one that a reasonable person would find hostile or abusive, and one that the victim in fact did

perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); see also Harris v.

Forklift Sys., Inc., 510 U.S. 17, 21 (1993) ("Conduct that is not severe or pervasive enough to

create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.").  The Court will examine in turn each element of a prima facie case of a hostile work environment claim.

### 1. The Plaintiff's Claim that She Was Harassed Because of Her Sex

Courts in this district have "routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class." Na'im v. Clinton, 626 F. Supp. 2d 63, 73 (D.D.C. 2009).  Therefore, in order for a harassment claim to prevail, it "must be clear that the hostile work environment was the result of discrimination based on a protected status."  Burton v. Batista, 339 F. Supp. 2d 97, 107 (D.D.C. 2004).  Thus, allegations of discriminatory acts that are unrelated to the plaintiff's protected status cannot be used to support a hostile work environment claim under Title VII.  Nurriddin v. Goldin, 382 F. Supp. 2d 79, 108 (D.D.C. 2005).  But "[t]here is little question that incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination—for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not."  Alfano v. Costello, 294 F.3d 365, 375 (2d Cir. 2002); see also id. at 378 ("Facially neutral incidents may be included . . . among the totality of the circumstances [considered] in [a] hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex.  But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.").

The defendant argues that several of the acts of sexual harassment alleged by the plaintiff are "neither sexual nor gender-based," and, therefore, as a matter of law cannot constitute

unlawful sexual harassment.  Def.'s Supp. Reply at 4.  Specifically, the defendant references the plaintiff's allegations that Chief Pachon pressured her to perform her job duties in accordance with his preferences, implemented new procedures, insisted that the plaintiff brief him on job-related matters, and repeatedly asked the plaintiff work-related questions.  Id.  These facts, when viewed in isolation, do initially appear unrelated to the plaintiff's sex, but the plaintiff also makes other allegations (for example, the claim that Chief Pachon stared at women's breasts) that provide a "circumstantial or other basis," Alfano, 294 F.3d at 378, for a fact-finder to reasonably infer that these events were based on the plaintiff's sex.  Because the Court at this stage of the proceedings must draw all justifiable inferences in the nonmovant's favor, Anderson, 477 U.S. at 255, the Court cannot now conclude as a matter of law that the complained about conduct was not a result of the plaintiff's sex.

     2.  The Plaintiff's Claim that the Alleged Harassment was Subjectively Unwelcome

     The defendant argues that the "[p]laintiff's actions indicate that she perceived the vast majority of Mr. Pachon's actions as mere annoyances rather than harassing conduct that was hostile or abusive and subjectively offensive."  Def.'s Supp. Reply at 7.  At this stage in the proceedings, however, when all inferences must be drawn in favor of the plaintiff as the nonmoving party, there seems to be sufficient evidence in the record that the plaintiff did perceive Chief Pachon's behavior as unwelcome.  See, e.g., Pl.'s Opp'n at 4 (asserting that the plaintiff "considered his looks 'disgusting'") (quoting the plaintiff's deposition transcript); id. (claiming that by February 2006, the plaintiff "'couldn't handle any more'") (quoting the plaintiff's deposition transcript); Def.'s Mem. at 17 (observing that the plaintiff testified that she found Chief Pachon to be "'annoying'") (quoting the plaintiff's deposition transcript).

3.  The Plaintiff's Claim that the Alleged Harassment was Severe and Pervasive

To determine whether a work environment is sufficiently hostile to be actionable under Title VII, the Supreme Court has instructed courts to consider the totality of the circumstances alleged including (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or merely offensive; and (4) whether the conduct reasonably interfered with the employee's performance.  Faragher, 524 U.S. at 787-88; see also Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (observing that a hostile environment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.").  The Supreme Court has explained that the standards necessary to establish a hostile work environment claim must be "sufficiently demanding" to ensure that Title VII does not become a "civility code" and "does not prohibit genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex."  Faragher, 524 U.S. at 788 (internal quotations and citations omitted).  Thus, "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not sufficient to constitute harassment.  Id.; see also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) ("Workplace conduct is not measured in isolation," and courts should consider the "frequency of discrimination . . . its severity[,] whether it is physically threatening or humiliating, or a mere offensive utterance."); Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("Even a few isolated incidents of offensive conduct do not amount to actionable harassment.").

The plaintiff alleges several acts of sexual harassment that she claims created a hostile work environment.[10]  She maintains that from the day he was appointed her supervision, Chief Pachon made clear that "things [were] going to be his way from thereon."  Pl.'s Opp'n at 4.  She claims that Chief Pachon complimented her on her clothing, id., remarked that she smelled good, id., Ex. I (Pl.'s Dep. Tr.) at 125:12-126:4, gave her nasty looks, id. at 4, told her, "I won't bite you", id., touched her hand to comment on her manicure, id. at 11, looked at her breasts, Def.'s Mem., Ex. B (Pl.'s Dep. Tr.) at 165:10-11, as well as those of other women, Pl.'s Opp'n at 10, and pulled his chair close to her and rubbed his legs against her legs, id.  The defendant asserts that these alleged acts "hardly rise to the level of actionable harassment under Title VII."  Def.'s Mem. at 14.

The Court agrees with the defendant.  Chief Pachon's conduct, assuming that it did occur as alleged, was clearly unsavory; however, as a matter of law, it simply cannot be characterized as so "severe," "pervasive," or "abusive" to constitute a hostile work environment.  See Burton, 339 F. Supp. 2d at 107.  To begin with, many of the plaintiff's allegations consist of isolated or infrequent occurrences—namely, Chief Pachon's comment about how she smelled, his comment that he would not bite her, the fact that he touched her hand two different times between October

---

[10]     The defendant argues that certain statements made by affiants whose affidavits are attached as exhibits to the plaintiff's opposition must be excluded.  See Def.'s Supp. Reply at 9 n.2 (arguing that the statements are "not based on personal knowledge and are comprised of inadmissible hearsay").  The Court agrees.  For example, Aida Sanchez-Marcano maintains that a PRFAA employee named Mrs. Ramos informed her about "an unwelcome sexual advance committed by [Chief Pachon].  According to Mrs. Ramos, the incident occurred when [Chief Pachon] suddenly approached [her] and gave her an unwanted kiss.  At the time of the incident [Chief] Pachon also told [Mrs. Ramos] that she was very pretty."  Pl.'s Opp'n, Ex. Q (Affidavit of Aida Sanchez-Marcano ("Marcano Aff."))  ¶ 3.  This evidence cannot be considered by the Court for two reasons.  First, the plaintiff does not at any time cite this portion of the record in her opposition or what she purports to be her statement of contested material facts, and Federal Rule of Civil Procedure 56(c)(3) makes clear that the "court need only consider the cited materials," even though "it may consider other materials in the record."  Second, these statements are inadmissible hearsay, and Federal Rule of Civil Procedure 56(c)(4) provides that supporting affidavits must "set out facts that would be admissible in evidence."  For the same reasons, the Court will not consider Ms. Sanchez-Marcano's statement that "[i]n general, there was a perception at the workplace that Mr. Pachon constantly engaged in improper conduct of a sexual nature.  However, most of the female employees were afraid of coming forward with a complaint against him."  Pl.'s Opp'n, Ex. Q (Marcano Aff.) ¶ 6.

and December 2005, and Chief Pachon's transfer of the petty cash box to his office—and
therefore are not "sufficiently continuous and concerted" to be characterized as pervasive.
Akonji v. Unity Healthcare, Inc., 517 F. Supp. 2d 83, 98 (D.D.C. 2007) (citing Carrero v. New
York City Housing Auth., 890 F.2d 569, 577 (2d Cir. 1989)).  Indeed, the plaintiff herself states
that "[w]hile a pattern of improper conduct began in September 2005[,] it was not until late 2005
and February 2006 that such conduct became pervasive and intolerable," Pl.'s Opp'n 4 n.1, which
seems to contradict the allegations made in the Second Amended Complaint (i.e., that the
plaintiff was subjected to a hostile work environment from the moment Chief Pachon became her
supervisor.  The conduct that did allegedly occur with greater frequency, including the plaintiff's
contention that Chief Pachon constantly made remarks about her clothing, Pl.'s Opp'n, Ex. I (Pl.'s
Dep. Tr.) at 131:13-14, always looked at her with a "nasty look," id. at 4, "constantly" looked at
women's breasts, id. at 10, and that she was subjected to heightened monitoring and supervision,
Second Am. Compl. ¶ 18, still falls short of the requisite severity to establish an actionable
harassment claim.

Courts in this Circuit and other Circuits have rejected claims of sexual harassment based
on conduct similar to, or even worse than, that alleged by the plaintiff.  See, e.g., Shepherd v.
Comptroller of Pub. Accts., 168 F.3d 871, 874 (5th Cir. 1999) (finding that an employer's "stares
and the incidents in which he touched [the plaintiff's] arm, although they occurred intermittently
for a period of time, were not severe"); Tomasello v. Rubin, 167 F.3d 612, 620 (D.C. Cir. 1999)
(holding that nondiscriminatory memoranda and isolated comments were insufficient to support
a claim of hostile work environment); Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir.
1998) (explaining that the plaintiff complained of "no more than teasing about waving at squad
cars, ambiguous comments about bananas, rubber bands, and low-neck tops, staring and attempts

to make eye contact, and four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks," and concluding that "the most salient feature of the harassment is its lack of severity"); Carter v. Greenspan, 304 F. Supp. 2d 13, 25 (D.D.C. 2004) (holding that the plaintiff's claims that the defendant "caressed [him] on his knee, placed her breast on [his] arm, and placed her fingers on [his] buttocks" were not sufficiently severe to create a hostile work environment). Moreover, none of the acts allegedly committed by Chief Pachon conduct can be objectively described as "physically threatening." Faragher, 524 U.S. at 787. The plaintiff has similarly failed to present any evidence that the alleged conduct altered the conditions of her employment, see Meritor, 477 U.S. at 67; for example, the plaintiff's principal claims are that Chief Pachon's conduct "bothered her," Pl.'s Opp'n at 5, that she couldn't handle it anymore, Def.'s Mem., Ex. B (Pl.'s Dep. Tr.) at 175:5, and that it took her longer to get her work done because Chief Pachon would interrupt her and put pressure on her to do the work, id., Ex. B (Pl.'s Dep. Tr.) at 158:8-159:2. Even drawing all inferences in favor of the plaintiff as the nonmoving party, the evidence before the Court does not show that the plaintiff worked in an environment pervaded with severe harassment.

Because the plaintiff has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," Celotex Corp., 477 U.S. at 323, namely, that the harassment was sufficiently severe or pervasive, the defendant is entitled to summary judgment on the plaintiff's sexual harassment claim.[11]

---

[11]    The plaintiff having failed to meet this key element necessary to establish a prima facie case of hostile work environment based on sexual harassment, the Court need not consider the final factor of the prima facie case, i.e., whether the plaintiff has a basis for imputing liability to the PRFAA.

C.  The Plaintiff's Retaliation Claim

The third issue before the Court is whether the plaintiff has produced sufficient evidence for a reasonable jury to find that the reason given by the PRFAA for her termination was not the actual reason and that the PRFAA, in fact, retaliated against her for activity protected by Title VII.  Title VII's anti-retaliation provision "forbids employer actions that discriminate against an employee (or job applicant) because [she] has opposed a practice that Title VII forbids." Burlington N. & Santa Fe R.R. Co. v. White, 548 U.S. 53, 59 (2006).  "Evaluation of Title VII retaliation claims follows the same burden-shifting template as discrimination claims."  Holcomb v. Powell, 433 F.3d 889, 901 (D.C. Cir. 2006) (citing Cones v. Shalala, 199 F.3d 512, 520 (D.C. Cir. 2000)).  "First, a plaintiff must establish a prima facie case of retaliation; if she meets that burden, the employer must articulate a legitimate nonretaliatory reason for its action; finally, the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation."  Holcomb, 433 F.3d at 901.

Following precedent set by the Supreme Court in U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711 (1983), however, this Circuit has repeatedly clarified that, at the summary judgment stage in a case in which an employee has suffered an adverse employment action and the employer has asserted a legitimate, nondiscriminatory or nonretaliatory reason for that action, "the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case."  Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008); see also Aikens, 460 U.S. at 715 ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."); Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (explaining that Brady's instruction that the district court should not examine whether a plaintiff

has made out a prima facie case "appl[ies] equally to retaliation claims").  Rather, in such circumstances, the Circuit has directed the district court to "resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non[]discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on [a prohibited basis]?"  Brady, 520 F.3d at 494.  "Of course, consideration of this question requires [the court] to evaluate all of the evidence before [it], including the same evidence that a plaintiff would use to establish her prima facie case."  George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005) (citing Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004)).

Here, the two threshold considerations of Brady—an adverse employment action and the expression of a legitimate, nonretaliatory reason—are present.  See Brady, 520 F.3d at 495 (identifying an adverse employment action sustained by an employee but finding a legitimate, nondiscriminatory reason for the employer's action).  First, the defendant does not dispute that the plaintiff suffered an adverse employment action.  Def.'s Mem. at 21-22.  And second, the defendant has articulated a legitimate, nonretaliatory reason for its decision to terminate the plaintiff's employment with the PRFAA: "Specifically, due to severe budgetary cuts, [the] PRFAA decided to eliminate several positions, including [the p]laintiff's, in order to stay within the agency's reduced budget."  Id. at 22.  Accordingly, the Court must proceed to examine whether the plaintiff has produced sufficient evidence for a reasonable jury to find that this asserted nonretaliatory reason was not the actual reason and that the defendant intentionally retaliated against her.

The plaintiff asserts that the defendant's reliance on budget cuts as the reason for her termination represents pretext for retaliation.  Confusingly, however, in the initial paragraphs of

her opposition to the defendant's summary judgment motion she cites facts that seem to support the defendant's position.  <u>See</u> Pl.'s Opp'n at 6-7; <u>see also</u> Def.'s Supp. Reply at 17 (referencing the facts underlying the plaintiff's arguments in her opposition).  For example, the plaintiff writes: "[The] PRFAA's budget was cut from $10.2 million to [approximately] $7 million . . . for the 2005-2006 fiscal year[], which commenced [o]n July 1, 2005.  [The] PRFAA maintained the same budget during . . . fiscal years 2005-2006 and 2006-2007."  Pl.'s Opp'n. at 6.  She continues: "During 2005[, the] PRFAA reduced its payroll in the approximate amount of $333,000.00, which represents approximately $200,000 less than in December 2004.  For that period the amount of employees was reduced [by] 44%."  <u>Id.</u>  The plaintiff also states that the "PRFAA reduced its operational expenses . . . by lowering its office[] space leased in Washington from [an expense of] $114,984 to $83,743."  <u>Id.</u> at 6-7.  In light of these acknowledgments, it seems that the plaintiff's arguments regarding pretext rest on the asserted facts (1) that the PRFAA had a surplus for the fiscal year 2004-2005, <u>id.</u> at 7, (2) that her employment at the PRFAA continued even after she received a memorandum in August 2005 warning of impending layoffs, <u>id.</u>, and (3) that after receiving a letter in August 2005 informing her that her salary would be reduced, <u>id.</u> at 8, the PRFAA sought to hire new employees in February 2006, <u>id.</u> at 9.

First, the plaintiff points to a November 17, 2005 letter received by Director Bhatia from the Assistant Secretary of the Central Accounting Area of the PRFAA.  <u>Id.</u> at 7.  The letter begins, "[w]e make reference to your communication in which [you] request authorization to utilize the fiscal year 2004/2005 surplus to pay the expenses of an external audit."  <u>Id.</u>, Ex. S (Nov. 17, 2005 Letter) at 1.  The letter makes clear, however, that "all authorized assignment and funds for an economic year, will be exclusively applied for the payment of expenses

legitimate[ly] incurred during the respective year or for the payment of obligations legally acquire[d] and properly set forth in the books of said year." Id., Ex. S (Nov. 17, 2005 Letter) at 1. The letter also explains that any unspent funds were required to be returned to the Secretary of the Treasury. Id., Ex. S (Nov. 15, 2005 Letter) at 1. Director Bhatia's request to use the surplus to facilitate an external audit was therefore rejected. Id., Ex. S (Nov. 15, 2005 Letter) at 1.

Second, the plaintiff seemingly argues that because the Administration, Budget and Finance Division did not "cease to exist," despite an August 17, 2005 memorandum indicating that the division would be eliminated, the defendant has overstated the severity of the budgetary issues it faced prior to her termination. Id. at 7. The August 17, 2005 Memorandum reported on "Administrative Changes," and stated that the "PRFAA's Administration, Budget and Finance Division will cease to exist." Id., Ex. L (August 17, 2005 Memorandum from Director Bhatia to all PRFAA staff ("Aug. 17, 2005 Memo.")) at 1. The memorandum continues, "Mr. Pachon and I will announce a full restructuring of the Budget and Finance Division within the next ten days." Id., Ex. L (Aug. 17, 2005 Memo.) at 1. The plaintiff alleges that the restructuring referenced in August 17, 2005 memorandum took place nine days later "on August 26[,] and as a consequence [the p]laintiff's position continued to exist." Id. at 8. The plaintiff further asserts that "[t]he memorandum made evident that Ms. Aleman w[ould] continue performing the same duties she was performing prior to the reorganization implemented in August 2005 as directed by Mr. [Bhatia]." Id.

Next, the plaintiff maintains that the "economics measures at no time [sought] to eliminate [her] position but to reduce her salary, as well as the . . . salaries of employees earning more than $35,000." Id. The plaintiff points to an August 26, 2005 letter as evidence that her

position was never scheduled for elimination.  Id.  (explaining that the plaintiff's position was "to be uph[e]ld[,] but with a 15% reduction o[f] her salary").  The letter states:

> As explained during our August 4, 2005 meeting, due to the 32% reduction on [the] PRFAA's FY 2005-2006 budget, we were forced to implement numerous austerity measures to avoid or minimize [layoffs].  Specifically, we announced an agency-wide implementation of a salary and work hours reduction.  At this time, I would like to provide additional information about how it will impact each one of us.

Id., Ex. N (August 26, 2005 letter from Director Bhatia to the plaintiff ("Aug. 26, 2005 letter")) at 1.[12]  The letter goes on to explain that the plaintiff's salary would be reduced by 15%, that she would be limited to thirty-two hours of work per week, and that the reduced schedule would be in effect for the next six months.  Id., Ex. N (Aug. 26, 2005 letter) at 1.  The letter concludes: "Please rest assured that we are taking all necessary and reasonable steps to resolve the current fiscal situation in the manner most beneficial to our staff and our constituents."  Id., Ex. N (Aug. 26, 2005 letter) at 2.

Finally, the plaintiff references a February 7, 2006 letter received by Director Bhatia and contends that "[d]uring February 2006, Mr. B[hatia] attempted to hire[] additional personnel to work at [the] PRFAA."  Id. at 9; see also Pl.'s Opp'n, Ex. O (February 7, 2006 letter from Guillermo San Antonia Acha, Legal Advisor, to Director Bhatia ("Feb. 7, 2006 letter")).[13]  Although the plaintiff does not present any argument that corresponds with this letter, it is presumably offered to show that the defendant's monetary woes have been exaggerated.  The letter was written to Director Bhatia in response to prior letters in which he sought authorization

---

[12]     Although the signature on the letter is illegible, the plaintiff's opposition makes clear that this letter was sent by the Executive Director, i.e., Director Bhatia.  Pl.'s Opp'n at 8.

[13]     The date of the letter seems to be incorrect, as the letter begins "I make reference to your communications of February 2 and 9, receipt on the 13th and 14th," Pl.'s Opp'n, Ex. O (Feb. 7, 2006 letter), thus making it impossible that the reply could be written on February 7.  Nonetheless, as the letter is clearly dated February 7, 2006, the Court will refer to it as the February 7, 2006 letter.

to appoint three trust employees.  Id., Ex. O (Feb. 7, 2006 letter) at 1.  The letter explains that in

accordance with an executive order issued by the Governor of Puerto Rico in February 2005, all

agency chiefs or directors "must reduce the trust personnel payroll expenses of the agency they

manage [by] at least 10%."  Id., Ex. O (Feb. 7, 2006 letter) at 1.  It also reminded Director Bhatia

that a different executive order issued in March 2005 ordered that there be no new appointments

for transitory or irregular employees, halted the renewal of such appointments, and provided for

"the freezing of all vacant positions of employees in the Government of the Commonwealth of

Puerto Rico."  Id., Ex. O (Feb. 7, 2006 letter) at 1.  The February 7, 2006 letter thus denied

Director Bhatia's request to appoint three new employees.  Id., Ex. O (Feb. 7, 2006 letter) at 1.

When the above evidence is evaluated in answering the "question of retaliation vel

non,"[14] Jones, 557 F.3d at 679, it is insufficient to permit a reasonable jury to find that the

defendant's asserted nonretaliatory reason was not the actual reason for the plaintiff's

termination.  As to the plaintiff's argument that the PRFAA was operating with a budget surplus,

she relies on one letter that vaguely references a surplus for the 2004-2005 fiscal year.  Pl.'s

Opp'n at 7.  The letter does not identify the amount of that surplus, nor does it give any

indication that the remainder of the funds were from the budget allotted to the plaintiff's division

at the PRFAA.[15]  Assuming, however, that the surplus was of even a modest amount and that it

consisted of funds allocated to the plaintiff's division, the surplus was for the 2004-2005 fiscal

year—July 1, 2004 through June 30, 2005—and the plaintiff was not terminated until March

2006.  In other words, the fact that an earlier surplus may have once existed does not speak to the

---

[14]     The English translation of the Latin term vel non is defined by Black's Law Dictionary as: "[o]r the absence
of it."

[15]     The plaintiff herself alludes to the existence of different budgets.  See Pl.'s Opp'n at 6 (noting that some
employees were paid from a separate budget that had been specially assigned by the Puerto Rican legislature in 2004
during the previous administration).

budgetary constraints confronting the PRFAA at the time the plaintiff's position was eliminated or whether funds may have existed at that time that could have obviated the need to eliminate her position.  Furthermore, the letter on which the plaintiff relies itself makes clear that the surplus funds had to be expended on costs incurred in the 2004-2005 fiscal year or returned to the Treasury.  Id., Ex. S (Nov. 15, 2005 Letter) at 1.  In short, the November 15, 2005 letter does little, if anything, to contest the legitimate, nonretaliatory reason provided by the defendant for the plaintiff's termination.

Next, the plaintiff's argument that because the Administration, Budget and Finance Division did not cease to exist shows that the defendant has overstated its budgetary crisis not only fails to demonstrate pretext, but also contradicts her own deposition testimony.  As the defendant points out, Def.'s Supp. Reply at 18, the plaintiff's deposition testimony acknowledged that the organization of the PRFAA had changed, at least in name: "Q. And then after September 1, 2005, the administration, budget, and finance division ceased to exist; correct?  A.  All the employees were the same[,] except they just changed the name of the division."  Def.'s Mot. for Supp. Ex., Ex. 1 (Pl.'s Dep. Tr.) at 64:8-12.  Def.'s Mem., Ex. A (Bhatia Aff.) ¶ 11.  Even absent the plaintiff's own acknowledgment of divisional renaming, the August 17, 2005 memorandum does not show that the defendant's legitimate, nonretaliatory reason for the plaintiff's termination was a pretext.  While the plaintiff may have interpreted the "cease to exist" language in the August 17, 2005 memorandum as meaning that all employees in that division would be terminated, that interpretation is not at all evident from the plain language of the memorandum.  Indeed, the memorandum clarifies that there will be a "new Budget and Finance Division."  Pl.'s Opp'n, Ex. L (Aug. 17, 2005 Memo.) at 1.  Although the memorandum does state that "Jorge Pachon will cease his functions as Internal Auditor and will work with the current

Administration, Budget and Finance Division to begin a smooth transition process," id., Ex. L (Aug. 17, 2005 Memo.) at 1, the Court does not agree with the plaintiff that this was a clear indication that she would continue performing the same duties, especially in light of the fact that the memorandum also announced the elimination of that division, id., Ex. L (Aug. 17, 2005 Memo.) at 1. Rather, this part of the memorandum does little more than speak to the organizational changes taking place at the PRFAA; it does not address the plaintiff's future status at the PRFAA.

Next, rather than illustrating that the plaintiff's position was immune to budget cuts, the August 26, 2005 letter shows that the plaintiff's position was one that the defendant believed could be targeted to save costs. The plaintiff is entirely correct that the August 26, 2005 letter reduces her salary, Pl.'s Opp'n, Ex. N (Aug. 26, letter) at 1, but it does not, as she contends, demonstrate that her position was "to be upheld," id. at 8. It is true that the defendant initially attempted to confront its financial situation by reducing salaries, but this was no guarantee that these measures would entirely or forever remedy the situation, nor did the August 26, 2005 letter foreclose the defendant from pursuing other avenues to address its reduced budgets. Indeed, the August 26, 2005 letter ends with the assurance that the PRFAA was "taking all necessary and reasonable steps to resolve the current fiscal situation in the manner most beneficial to our staff," Pl.'s Opp'n, Ex. N (Aug. 26, 2005 letter), and it was reasonable for the defendant to initially attempt to remedy the problem by reducing salaries, but this did not preclude the defendant from taking other measures as the need would arise. In any event, the August 26, 2005 letter viewed in conjunction with Director Bhatia's statement that the plaintiff's position was identified for possible elimination in July 2005 cuts against the plaintiff's pretext argument because it shows that the defendant targeted the plaintiff's position, albeit for salary reduction and not termination,

and proves that the defendant took, at the plaintiff's expense, steps to remedy the budgetary problems months before the plaintiff mentioned the alleged harassment to anyone at the PRFAA. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (concluding that an employer "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality" with respect to retaliation); see also Trawick v. Hantman, 151 F. Supp. 2d 54, 63 (D.D.C. 2001) (holding that because a termination process had already been initiated, no reasonable juror could conclude that the termination had been caused by participation in protected activity).

Finally, much like the plaintiff's other attempts to cast dispersions on the actual severity of the defendant's budgetary cuts, the February 7, 2006 letter does no such thing.  The letter points to financial woes as the basis for denying Director Bhatia's request to fill vacant positions. Pl.'s Opp'n, Ex. O (Feb. 7, 2006 letter).  The fact that a money-strapped agency sought, but was denied, permission to employ three new employees does not give rise to a reasonable inference that the defendant impermissibly retaliated against the plaintiff when it ended her employment.

As this Circuit has made clear, it is not for the Court "'to judge the wisdom of a[n employer's] business decisions.'"  Stacey v. Allied Stores Corp., 768 F.2d 402, 408 (D.C. Cir. 1985) (quoting Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d. Cir. 1982)).  The record is replete with evidence demonstrating the severity of the fiscal crisis confronting the defendant, indeed, the entire of Puerto Rican government, during the 2004-2005 and 2005-2006 fiscal years.  See, e.g., Def.'s Mem., Ex. A (Bhatia Aff.); Pl.'s Opp'n, Ex. L. (Aug. 17, 2005 Memo); id., Ex. N (Aug. 26, 2005 letter); Id., Ex. O (Feb. 7, 2006 letter).  Moreover, the defendant continued to eliminate occupied positions and to freeze hiring to fill vacant positions in the months following the plaintiff's termination.  Def.'s Mem., Ex. A (Bhatia Aff.) ¶ 17.  Thus, rather than presenting

evidence that the PRFAA's stated reason for her termination is pretext for retaliation, the plaintiff's own evidence confirms the financial turmoil that faced the PRFAA. <u>See</u> Pl.'s Opp'n at 6-7. The plaintiff has therefore failed to present any evidence that would allow a reasonable jury to infer that the defendant's stated reason for her termination—budget cuts—was not the actual reason. For example, the plaintiff has not shown that the PRFAA had resolved its budgetary challenges at the time of her termination in March 2006, nor has she provided evidence tending to indicate that her position was not eliminated, but merely filled by someone else. Such evidence is, of course, not necessarily required for the plaintiff to defeat the defendant's motion for summary judgment, but it is evidence of the type that would enable a reasonable jury to infer that the defendant's stated legitimate, nonretaliatory reason for terminating the plaintiff is a pretext. The Court appreciates that in assessing the plaintiff's evidence "to determine whether a jury could reasonably rule in her favor, [it must] remain mindful that a plaintiff can show [retaliation] 'either by directly persuading the [factfinder] that a [retaliatory] reason more likely motivated the employer[,] or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" <u>George</u>, 407 F.3d at 413 (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)). The plaintiff having failed to present any such evidence in either respect, the defendant is entitled to summary judgment on the plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has failed to make an adequate showing that the harassment she claims to have been subjected to was sufficiently severe or pervasive to be actionable. She has similarly failed to present sufficient evidence to allow a reasonable jury to infer that the defendant's stated reason for her termination was pretextual. Accordingly, the defendant is entitled to judgment as a matter of law with respect to

both the plaintiff's sexual harassment and retaliation claims, and the Court must therefore grant

its motion for summary judgment.

**SO ORDERED** this 26th day of September, 2011.[16]

REGGIE B. WALTON
United States District Judge

---

[16]     An order will be issued contemporaneously consistent with this memorandum opinion.